# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD KINNAMON,<br><br>    Plaintiff,<br><br>vs.<br><br>C. LATIA, et al.,<br><br>    Defendants. | 1:12cv01325 AWI DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>(Document 45)<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Todd Kinnamon ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's May 8, 2013, First Amended Complaint against Defendants Latia[1] and Johnson for violation of the Eighth Amendment.

Defendants filed their motion for summary judgment on September 23, 2014.[2]

---

[1] Defendant is sued at Defendant "Latia," though it appears that the correct spelling is "Laita."

[2] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

1

After the time for filing an opposition had passed, the Court notified Plaintiff that if he did not file an opposition, the motion would be decided without his input. The Court gave Plaintiff twenty-one additional days to file an opposition.

Plaintiff filed an opposition on January 16, 2015.

Defendants filed their reply on January 23, 2015.

The motion is suitable for decision pursuant to Local Rule 230(l).

## I.    LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing

2

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at R.J. Donovan Correctional Facility in San Diego, California. The events complaint of occurred while Plaintiff was housed at Pleasant Valley State Prison ("PVSP").

On January 3, 2009, Plaintiff alleges that Defendant Jordan grabbed him, kicked him and then hit his chest to the wall. Plaintiff alleges that he complied with Defendant Jordan's orders, but Defendant Jordan kicked and hit him. Defendant Latia also hit Plaintiff in the back and chest. The attack caused permanent injury.

## III.    UNDISPUTED MATERIAL FACTS[3]

On January 3, 2009, Plaintiff was housed at PVSP and was taken to the Correctional Treatment Center ("CTC"). Latia Decl. ¶ 3. The CTC houses inmates who need professionally supervised health care that cannot be provided on an outpatient basis. Latia Decl. ¶ 3.

---

[3] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendants as undisputed. Local Rule 260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint or opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

In January 2009, Defendants Latia and Jordan were employed by the California Department of Corrections and Rehabilitation ("CDCR") and assigned to Facility A, Building 3, as Floor Officers at PVSP.  Latia Decl. ¶ 1; Jordan Decl. ¶ 1.  Defendants Jordan and Latia received training in the use of force policy maintained by CDCR, and both understood that CDCR authorized reasonable force necessary to gain compliance with a lawful order, subdue an attacker, overcome resistance and effect custody.  Latia Decl. ¶2; Jordan Decl. ¶ 2.

On January 3, 2009, Defendant Jordan was inventorying and packing Plaintiff's personal property in the day room because he was told that Plaintiff was being transferred to the CTC.  Jordan Decl. ¶ 3.  When inmates are transferred from their housing unit, their personal property is inventoried by staff and stored for safekeeping.  Jordan Decl. ¶ 4.  The stealing of personal property items has invoked violent reactions, such as cellmate on cellmate stabbings.  Pl.'s Dep., 11:22-12:1, 13:1-4.

On January 3, 2009, Plaintiff returned to his housing unit.  Jordan Decl. ¶ 3.  As he entered the building, Plaintiff noticed that Defendant Jordan was inventorying his personal property.  Latia Decl. ¶ 4; Jordan Decl. ¶ 5.  Plaintiff questioned Defendant Johnson about his property.  Pl.'s Dep. 11:4-7; Latia Decl. Jordan Decl. ¶¶ 5-6; Latia Decl. ¶ 5.

Defendant Jordan then ordered Plaintiff to return this his cell.  Latia Decl. ¶ 6; Jordan Decl. ¶ 7.  Plaintiff did not comply and "verbally fought" with Defendants.  Pl.'s Dep. 11:10-11; 14:6-9; 33:20-34:4.  Plaintiff was aware that he was required to comply with officers' orders.  Pl.'s Dep. 14:2-4; 53:2-8.

Defendant Jordan eventually activated his personal alarm, which signified an emergency and summoned staff for assistance.  Latia Decl. ¶ 7; Jordan Decl. ¶ 8.

Correctional staff responded to the alarm and an altercation followed.  Latia Decl. ¶¶ 8-15; Jordan Decl. ¶¶ 13-16; Pl's Dep. 16:12-17:2;  22:12-18.

Once handcuffs were secured on Plaintiff, he was escorted from the building. Latia Decl. ¶ 15; Jordan Decl. ¶ 18.

A medical assessment conducted after the incident revealed that Plaintiff had a scratch on his wrist and lower back. Ex. D., at 17.

## IV.   DISCUSSION

### 1.   Legal Standard

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992). What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. Hudson, 503 U.S. at 8 (quotation marks and citations omitted). For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins, 559 U.S. at 37, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 7) (quotation marks omitted).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. Wilkins, 559 U.S. at 37, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9) (quotation marks omitted). Necessarily excluded from constitutional recognition is the de minimis use of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. Wilkins, 559 U.S. at 37-8, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9-10) (quotations marks omitted). In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (quotation marks and citations omitted).

While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it. Hudson, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency. Wilkins, 559 U.S. at 37, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9) (quotation marks omitted). Thus, it is the use of force rather than the resulting injury which ultimately counts. Id. at 37-8.

2.  Analysis

Defendants move for summary judgment based on their contention that Plaintiff was upset, disruptive, and noncompliant, and that they used only the minimal amount of force necessary to maintain control. However, for the reasons that follow, genuine disputes of material fact exists that prevent summary judgment.

As an initial matter, Plaintiff's opposition is one paragraph in length and cites to documents attached to his First Amended Complaint. There are no exhibits attached, however. Nonetheless, Plaintiff's statements in his verified First Amended Complaint should be taken into account in determining whether a dispute of fact exists. Moreover, Defendants have used various portions of Plaintiff's deposition to support their argument. A review of the entire deposition, which was lodged with the Court by Defendants, also offers evidence that should be examined in analyzing this motion. Although neither Defendants nor Plaintiff cite to specific portions of Plaintiff's deposition that call Defendants' facts into dispute, the Court cannot simply ignore the evidence submitted with this motion.

Turning to the factual issues, it is undisputed that Plaintiff did not follow Defendant Jordan's initial order to return to his cell. The events leading up to this, however, are disputed. According to Defendants, Plaintiff became agitated when he saw Defendant Jordan with his property and started moving towards him in an aggressive manner, stating, "What the fuck are you doing with my property?" Latia Decl. ¶ 5; Jordan Decl. ¶ 5. Plaintiff demanded the return of his property. Jordan Decl. ¶ 6. According to Plaintiff, he asked Defendant Jordan, "Why is

my property out in the dayroom?" Defendant Jordan replied, "Oh, I thought you were going to the hospital." Plaintiff said, "Sir, may I have my property back?" Defendant Jordan said, "No, get out of here." Pl.'s Dep. 11:4-7.

The manner in which Plaintiff did not obey is also disputed. Plaintiff testified that he "sat down right on the floor" because he wanted his property. Pl.'s Dep. 52:14-24. Plaintiff said, "I'm not and I'm sitting on the floor until the sergeant comes. There is no reason for you to take my property." Pl.'s Dep. 11:1-17; 14:6-9.

According to Defendants, however, Plaintiff did not follow Defendant Jordan's order, and instead continued to walk towards Defendant Jordan, stating, "I am not going to lock up, you're going to have to take me to the hole." Latia Decl. ¶ 6; Jordan Decl. ¶ 7. Defendant Jordan believed that this meant that Plaintiff was not going to comply with his orders, and that Plaintiff would need to be placed in Administrative Segregation. Jordan Decl. ¶ 7. Officer Lopez, the control booth officer, also ordered Plaintiff to return to his cell. Ex. D (Crime Incident Report), at 10.

Therefore, while there is no dispute that Plaintiff did not follow the initial order to return to his cell, the facts that Defendant Jordan relies upon to support his belief that Plaintiff was a threat are disputed. While Defendant Jordan contends that Plaintiff walked towards him in an aggressive and agitated manner, Jordan Decl. ¶¶ 7-8, Plaintiff states that he did not walk towards Defendant Jordan or say anything. Pl.'s Dep. 15:13-15, 20:19-24.

Defendant Jordan then states that he ordered Plaintiff to get down, but that he refused and remained standing. Jordan Decl. ¶¶ 9-10. According to Plaintiff, however, he was already down, and got up when Defendant Jordan ordered him to so do. Pl.'s Dep. 15:8-14, 53:6-10.

At this point, the parties agree that Defendant Jordan activated his personal alarm. The events after the alarm activation, however, are entirely disputed. Defendant Jordan states that he ordered Plaintiff to turn around, face the wall and place his hands behind his back. Latia Decl. ¶

7

7; Jordan Decl. ¶ 11. He contends that Plaintiff refused and became loud and disruptive. Latia Decl. ¶ 7; Jordan Decl. ¶ 12. Defendants state that Plaintiff became compliant when custody staff responded to the alarm, and he turned around to face the wall and placed his hands behind his back. Jordan Decl. ¶ 13. However, when Defendant Jordan reached for Plaintiff's right hand to place it into handcuffs, Plaintiff broke his grasp by twisting his torso to the right and left. Latia Decl. ¶ 8; Jordan Decl. ¶ 14; Ex. D, at 9, 11. To regain order and to assist in safely handling Plaintiff, Defendant Latia placed his left hand on Plaintiff's left shoulder blade, his right hand on Plaintiff's right shoulder blade and pinned him to the wall. Latia Decl. ¶ 9. Officer Rodriguez took control of Plaintiff's left hand and moved it behind his back. Latia Decl. ¶ 10; Jordan Decl. ¶ 15; Ex. D, at 9. To avoid being injured and to stop Plaintiff's resistive behavior, Defendant Jordan gained control of Plaintiff's right hand and forced it behind his back so that he could secure it in handcuffs. Latia Decl. ¶ 10; Jordan Decl. ¶ 16. As Defendant Jordan was placing handcuffs on Plaintiff, Plaintiff thrust his head backwards towards Defendant Jordan. Latia Decl. ¶ 11; Ex. D. at 15. To prevent Plaintiff from hurting himself or staff, Defendant Latia placed his left hand on the side of Plaintiff's face and held his head against the wall. Latia Decl. ¶ 12

Plaintiff testified, however, that Defendants did not give him an order to turn around. Pl.'s Dep. 16:14-16. Instead, they threw him on the office door. Defendant Latia grabbed Plaintiff's neck and pushed with his other hand "[his] pacemaker on the -- on the wall, hitting-- injuring my pacemaker." Plaintiff didn't do anything, just went with the flow. He did not attempt to turn around. Pl.'s Dep. 17:3-14. Defendant Jordan also pushed him up against the wall, hitting his pacemaker, and then kicked him in the lower back. Pl.'s Dep. 16:12-17:2. Defendant Latia kicked him in the lower back, and pushed his face up against the wall with his right hand. With his left hand, he hit Plaintiff's pacemaker against the wall and then kicked him in the back. "Actually, both officers did that." Pl.'s Dep. 22:12-18.

Defendants deny kicking or hitting Plaintiff in the chest or back, and contend that they did not slam him into the wall. Latia Decl. ¶¶ 13-14; Jordan Decl. ¶ 17. Instead, Defendants contend that they only used the amount of force necessary to maintain control of Plaintiff and to prevent him from injuring himself or other staff members, and to stop his assaultive behavior. Latia Decl. ¶ 16; Jordan Decl. ¶ 20.

Taking these facts in the light most favorable to Plaintiff, a genuine dispute exists as to whether Defendants used force to gain compliance of Plaintiff, or whether the use of force was used maliciously or sadistically for the purpose of causing harm. Even though it is undisputed that Plaintiff did not comply with Defendant Jordan's initial order to return to his cell, the alleged use of force occurred after Plaintiff contends that he began complying with orders. There is also a dispute as to Plaintiff's actions, actions that Defendant Jordan uses to justify his belief that Plaintiff was a threat.

For these reasons, summary judgment must be denied.

3.   <u>Qualified Immunity</u>

Finally, Defendants argue that they are entitled to qualified immunity.

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Mueller v. Auer</u>, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," <u>Pearson v. Callahan</u>, 555 U.S. 223, 231,

129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Mallei v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

In this instance, the evidence viewed in the light most favorable to Plaintiff demonstrates a constitutional violation, and there exist triable issues of fact as to whether that right was violated. Therefore, the Court proceeds without further discussion to the second step of the inquiry.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508 (2002). While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful." Hope, 536 U. S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," Hope, 536 U.S. at 741.

In 2009, an inmate's right to be free from the use of excessive physical force was clear. Hudson, 503 U.S. at 6-7 (articulating the standard for excessive force claims under the Eighth Amendment).

The Court recognizes that the existence of material factual disputes does not necessary preclude a finding of qualified immunity. Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," Ashcroft v. al-Kidd, __ U.S. __, __, 131 S.Ct. 2074, 2085 (2011). Here, however, assuming the facts in the light most favorable to Plaintiff, no reasonable officer would have believed that kicking and hitting an inmate who had complied with orders, and did not pose a threat, was lawful.

Accordingly, Defendants are not entitled to qualified immunity.

## V.     FINDINGS AND RECOMMENDATIONS

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections must be filed within fourteen (14) days from the date of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 11, 2015**              /s/ Dennis L. Beck
                                        UNITED STATES MAGISTRATE JUDGE

11